IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RHEASHAD LAMAR LOTT, | ) | |
| ID # 1596571, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:13-CV-2699-P (BH) |
| | ) | |
| WILLIAM STEPHENS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant filings and applicable law, the petition should be denied.

## I.  BACKGROUND

Rheashad Lamar Lott (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondent is William Stephens, Director of TDCJ-CID.

## A.    Factual History

Petitioner was indicted for engaging in organized criminal activity by committing aggravated assault with intent to establish, maintain, or participate as a member of a criminal street gang.  (1 Clerk's Record "CR" 2).  In a pretrial hearing outside the jury's presence, a detective testified about three criminal street gangs:  the "Knock-Out Squad" (KOS), the "Untamed Gorillas" (UTG), and the "Top Rank Niggas" (TRN).  (4 Reporter's Record "RR" 10-15).  He identified four pictures that he had obtained from a public MySpace webpage showing Petitioner "throwing up" a UTG gang

sign.  (4 RR 12; 5 RR 14).  Under cross-examination by trial counsel, a detective explained how the police department confirms who is in a gang, what the criteria are, and that Petitioner was not in the police department's gang database because it had not been able to confirm his membership yet.  He explained further, "And I've been told by the D.A.s that I'm not allowed to use those pictures on MySpace to use that as one of the criteria unless I see it in person."  (4 RR 16-17).

The evidence at trial showed that the three criminal street gangs planned to have a fist fight at the YMCA in Grand Prairie.  (4 RR 33-34, 47-48, 73, 83-84).  UTG is affiliated with TRN, and they are both from Arlington.  KOS is a Grand Prairie gang.  (4 RR 15).  As YMCA staff were breaking up the fight, a car drove up and three young men, including Petitioner, jumped out to join the fight.  (4 RR 38, 49-50, 64, 104).  Petitioner was heard to say, "I'm about to murk [kill] one of those n*****," and a short time later was seen shooting the seventeen year-old victim in the face.  (4 RR 39, 51-53, 77-78, 90).  All three men jumped back in the car and it drove away, but not before a YMCA employee had obtained the license plate number.  (4 RR 42, 66, 81, 88, 102-03).  The driver was quickly tracked down by the police, and he later testified for the State, along with one of the other passengers, that Petitioner was the shooter.  (4 RR 51-55, 68-69, 141-44).  The driver also testified that Petitioner told him he was a member of UTG.  (4 RR 62-63, 71).  The passenger also testified that Petitioner is affiliated with UTG, but he did not know if Petitioner is a member.  (4 RR 54, 57).  The State also presented the four MySpace photographs of Petitioner "throwing up" the UTG gang sign.  (4 RR 131-33).

Petitioner testified at the guilt phase that when he got into the car, he put his iPod on and could not hear the conversation, but he thought they were going to the mall to get females.  He said they drove "three cars deep," and that he was surprised when they arrived to the fight at the YMCA

in Garland because he thought he was in Irving.  (4 RR 202-06).  Petitioner testified that he gave first aid to someone on the TRN side of the fight and was trying to get this injured person into the car when he heard a gunshot.  He then abandoned the injured person, hopped into the car before it drove off, and later spent the night with a female he met on MySpace.  (4 RR 207-212).  He said he did not know someone had been shot until a detective told him two days later.  (4 RR 212).  During his testimony, he used one of the MySpace photos to show the jury his tattoo of Houston and explain that he was not throwing up a "U" for UTG but was making an "H" for "H-town" because he is from Houston.  (4 RR 214-16).  At punishment, Petitioner stated that he tried to kill himself the day the jury found him guilty, and that he could not go to the penitentiary for something he did not do.  He said he has never been in a gang; he has two MySpace pages but does not have access to his account and does not know where the police got the pictures.  (5 RR 42-50).  On cross-examination, he denied knowing what was going down at the YMCA: "Y'all have no forensics to link me to anything.  People lie every day.  DNA doesn't."  (5 RR 52).

The victim was shot between the eyes and remained in a persistent vegetative state at the time of trial, with the bullet still lodged in his brain.  (4 RR 28-29).  At the punishment phase of trial, the state presented a DVD recording of him that was admitted before the jury. (5 RR 22-30, State's Exhibit "SX" 114).

**B.     Procedural History**

On August 26, 2009, the jury convicted Petitioner and sentenced him to seventy years' confinement and a $10,000 fine.  *State v. Lott*, No.  F09-00780-I (Crim.  Dist.  Ct.  No.  2, Dallas Co., Tex. Sept.  8, 2009).  Petitioner appealed his sentence, and the Court of Appeals for the Fifth District of Texas affirmed in an unpublished opinion.  The Texas Court of Criminal Appeals denied

his petition for discretionary review. *Lott v. State*, No. 05-09-1098-CR, 2011 Tex. App. LEXIS 4951, 2011 WL 2573371 (Tex. App.–Dallas 2011, pet. ref'd).

Petitioner filed a *pro se* application for writ of habeas corpus raising fourteen grounds for relief. (1 State Habeas Record "S.H.Tr." 2-246). After remanding the case for additional fact finding on the ineffective-assistance claims, the Court of Criminal Appeals denied the application without a written order on April 10, 2013. *See Ex parte Lott*, WR-79,807-01 (Tex. Crim. App. Apr. 10, 2013); (1 S.H.Tr. Supp. 4; 1 S.H.Tr. at cover). Petitioner filed a federal petition for habeas relief and supporting memorandum. (*See* doc. 2, hereinafter Memorandum "Mem."). Respondent filed an answer and provided the state-court records. (*See* doc. 12, hereinafter Answer). Petitioner then filed a reply. (*See* doc. 18, hereinafter Reply).

**C.**   <u>**Issues**</u>

Petitioner claims the State is holding him unlawfully because (1) the evidence is legally insufficient, (2) the evidence is factually insufficient, (3) there is "no evidence" to support his conviction, (4) counsel was ineffective for failing to object to perjured testimony, (5) he is actually innocent, (6) his conviction is based on uncorroborated accomplice-witness testimony, (7) his counsel was ineffective for failing to object to the jury charge, (8) counsel was ineffective for failing to object to prosecutorial misconduct, and (9) the prosecution suppressed or destroyed exculpatory evidence, i.e., Petitioner's oral statement to law enforcement.

**II. AEDPA STANDARD**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Title

I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28

U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.  *Martin v.*

*Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law,

within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must

issue "if the state court identifies the correct governing legal principle from [the] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry*

*v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies

Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] prece-

dent to a new context where it should not apply or unreasonably refuses to extend that principle to

a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'un-

reasonable application' inquiry should ask whether the state court's application of clearly established

federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793.

5

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. SUFFICIENCY OF THE EVIDENCE (GROUNDS 1, 2, AND 3)

In his first three grounds for relief, Petitioner contends there is "no evidence" to support his conviction, and that the evidence is also legally and factually insufficient.

The Texas Court of Criminal Appeals no longer recognizes the separate factual sufficiency review that was established in *Clewis v. State*, 922 S.W.2d 126 (1996). *See Brooks v. State*, 323 S.W.3d 893 (2010). Petitioner admits as much. (Reply at 13). Even when factual sufficiency review was a cognizable claim in Texas courts, it did not implicate federal constitutional concerns and was not a basis for federal habeas relief. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *Spencer v. Dretke*, No. 3:02-CV-1988-D, 2005 U.S. Dist. LEXIS 4561, 2005 WL 696719, at *4 n.2 (N.D. Tex. Mar. 23, 2005) (recommendation of Mag. J.), *adopted by* 2005 U.S. Dist. LEXIS 7184, 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods*, 307 F.3d at 358; *West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996). Under *Jackson*, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

6

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In conducting that review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).  The Fifth Circuit has held that the legal sufficiency standard in *Jackson* also applies to claims of "no evidence."  *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002), *vacated on other grounds*, 541 U.S. 386 (2004).

Petitioner was charged with engaging in organized criminal activity.  The State had to prove that he, "with intent to establish, maintain or participate as a member of a criminal street gang, . . . committed the offense of aggravated assault against [the victim]" by shooting him with a firearm. (*See* 1 CR 16-17); Tex. Penal Code Ann. § 71.02(a) (West 2011).  Petitioner contends the evidence is insufficient to show both that he was the person who shot the victim and that he was a member of a criminal street gang.  The court of appeals resolved these claims against him on direct appeal. *Lott*, 2011 WL 2573371, at *1-2.

Petitioner essentially argues that the evidence is insufficient because the witnesses' testimony describing the shooter conflicted on some details, and no one who positively identified him in the courtroom was looking at the shooter at the moment the trigger was pulled.  Contrary to Petitioner's implication, this case does not rest on the eyewitness identification of a stranger.  The passenger and the driver knew Petitioner prior to the offense and testified that he was the shooter. The passenger testified that Petitioner said he was going to kill someone, that he (the passenger) told Petitioner to "chill" because they really were not fighting anymore.  Petitioner responded, "F*** that," and as the passenger went to help someone else, he heard a gunshot and saw the victim on the ground.  (4 RR 52-54).  The passenger saw the gun in the car afterwards and described it as a

7

chrome .25, and Petitioner said he thought he had shot one of them when they were driving back to

Arlington.  (4 RR 54, 176).  The driver testified that he was alone at the car when he heard the

gunshot, and that the three passengers (including Petitioner) jumped back into his car, and he drove

off.  (4 RR 65-66).  The driver later asked Petitioner what happened, and Petitioner said he shot

someone.  (4 RR 68).  The driver never saw the gun, but asked Petitioner what he did with the

weapon, and Petitioner responded that he had gotten rid of it.  (4 RR 69, 163-64).  Two friends of

the victim who did not know Petitioner prior to the offense testified that they had identified him as

the shooter in photo lineups a day or two after the offense.  (4 RR 78-79, 89-90, 196-97).  This

evidence is more than adequate to support the state court's rejection of Petitioner's claim regarding

the identity of the shooter.

Petitioner also identifies conflicts between the witnesses's testimony concerning what the

shooter was wearing and what he was seen doing at a given moment.  Generally, these were the

details explored by defense counsel through cross-examination.  In a legal sufficiency review, such

conflicts are resolved in favor of the jury's verdict and do not render the evidence legally

insufficient. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (stating that in a legal sufficiency

review, all credibility choices and conflicting inferences are to be resolved in favor of the verdict).

Petitioner next argues that the evidence is insufficient to show he is a member of a criminal

street gang.  He does not take issue with the State's proof that UTG is a criminal street gang, but

rather points out that the detective testified under cross-examination in the pretrial hearing and at

punishment that Petitioner was not in the police database as a confirmed gang member.  (4 RR 17;

5 RR 15).  The detective testified before the jury at the guilt phase, however, that not being in the

database did not mean that a person was not in a gang.  (4 RR 136).  The detective also testified that

UTG had over fifty confirmed members, but that "you can probably estimate double or even triple that." (4 RR 127). The fact that Petitioner was not in the law enforcement database as a confirmed gang member does not render the evidence insufficient. The driver testified that Petitioner told him he was a member of UTG. (4 RR 62-63, 71). The conviction is also supported by the admission of MySpace photographs showing Petitioner displaying what the detective identified as the UTG gang sign. (4 RR 130-33). Finally, a friend of the victim testified that he told the police in a written statement that "some UTG dude came and shot [the victim]." (4 RR 43).

Petitioner has failed to demonstrate that the state court unreasonably applied the *Jackson* sufficiency standard. He is barred from re-litigating his legal insufficiency and "no evidence" claims, and the factual insufficiency claim is not a ground for habeas relief. Claims 1, 2 and 3 should therefore be denied.

## IV.  INEFFECTIVE ASSISTANCE - PERJURY (GROUND 4)

In his fourth ground, Petitioner contends that his counsel was ineffective because he knew that the testimony of the detective, a second detective, the passenger, the driver, and three of the victims friends was false, but he allowed the State to use it without objection.[1] (Mem. at 17-35).

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A

---

[1] The State argues that any allegation that one of the victim's friends committed perjury is unbriefed and unexhausted. (Answer at 27-28). Petitioner clarified that he is not arguing that this friend committed perjury, (Reply at 22), so it is unnecessary to address this issue.

failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors. *Id.* at 695-96.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

## A.   <u>The detective</u>

Petitioner complains that his attorney failed to object when the detective gave false testimony to the jury by presenting the photos from MySpace and testifying that Petitioner was displaying the UTG gang sign in the pictures. (4 RR 131-32).

The knowing use of false testimony to obtain a conviction violates the due process clause of the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Perjured testimony is that which is knowingly false and does not include mere inconsistencies between a witness's pretrial statements and the witness's statements in trial. *See United States v. Viera*, 819 F.2d 498, 502 (5th

Cir. 1987); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (holding that due process is not implicated when testimony is challenged by another witness or is inconsistent with prior statements).   Likewise, contradictory testimony among different witnesses merely establishes a credibility question for the jury and does not, standing alone, establish perjury.   *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)).

The detective testified in a pretrial hearing that UTG is a criminal street gang, and he identified four photographs of Petitioner displaying the UTG gang sign that he had obtained from a MySpace webpage shortly after the offense. (4 RR 9-16).   During cross-examination, the detective was asked to describe how the police department confirms gang membership.   He testified that two out of six criteria must be met.[2]   He agreed that Petitioner's gang membership had not yet been confirmed under this criteria, explaining that the "gang net" had been up for only a couple of years, and that most of the contact with Petitioner happened before that time.   He also explained that the prosecutors had told him he could not use the pictures on MySpace as one of the criteria unless he saw something in person.  (4 RR 16-17).

Petitioner equates an element of the offense that the state must prove in trial – gang membership – with the police department's criteria for including a person in its confirmed gang-member database.   The detective testified that the database contains only a fraction of the actual gang members, and that a person can be in a gang but not in the database.  (4 RR 127, 136).   Furthermore, the state record contains no suggestion that the photographs used by the detective were not authentic, or that Petitioner is not the person depicted in them.   In fact, when Petitioner testified

---

[2] The six criteria are: (1) self-admission, (2) information from a credible person, (3) corroborated information from a person of unknown reliability, (4) giving gang signs or wearing colors affiliated with a gang, (5) in custody or detained with other gang members, and (6) hanging out at known gang locations with other gang members.  (4 RR 16-17).

before the jury, he did not deny he was in the photographs.  He only took issue with what the hand gesture signified, and even used one of the MySpace photos to show his "H-town" tattoo to the jurors.  (4 RR 214-16; SX 99).  Conflicts in the testimony about what the hand sign means do not establish perjury.[3]

## B.    The second detective

Petitioner next contends the second detective gave perjured testimony when the State called him on rebuttal to impeach Petitioner's testimony with a prior inconsistent oral statement, and his attorney did not object.  (5 RR 229).

Article 38.22, section 3 of the Texas Code of Criminal Procedure requires that oral statements of an accused be electronically recorded.  *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West 2005).  Section 5 provides that nothing in the article precludes the admission of a voluntary statement that has bearing upon the credibility of the accused as a witness, however.  *See* art. 38.22, § 5.  Defense counsel objected to the admission of the testimony under article 38.22 because the recording of the oral statement had been lost by the police when a new computer system was installed.  This objection was overruled because Petitioner had testified, thereby putting his credibility at issue.  (5 RR 228).  This ruling was challenged on appeal and upheld by the court of appeals.  *Lott*, 2011 WL 2573371 at *3.  There is no indication in the state court records that the second detective testimony was false; it simply conflicted with Petitioner's own testimony.  The lack

---

[3]  Petitioner argues in his Reply that trial counsel rendered ineffective assistance by failing to elicit testimony from the detective at the guilt phase that the police had not been able to confirm Petitioner's membership in UTG.  (Reply at 16-17).  (Defense counsel did elicit this testimony at the punishment phase.  (5 RR 15-16).)  This argument fails for the essentially same reason as his perjury argument.  The detective had already testified on direct examination at the guilt phase that the actual number of UTG members was two or three times the number in the database.  (4 RR 127).  Eliciting testimony that Petitioner was not in the database could have opened the door to testimony about why Petitioner was not in the database, included his prior contacts with police.  (4 RR 17).  Petitioner has not shown that counsel was also ineffective in this regard.

of a recording does not make it false, and any conflicts were for the jury to resolve.

### C.      The other witnesses

Petitioner asserts that the testimony of both the car driver and the passenger is perjured because it conflicts with their prior written statements to police that minimized their involvement and knowledge of the shooting.  Petitioner alleges that the victim's friends' testimony that they identified Petitioner in a photo lineup as the person who shot the victim was false because they could not positively identify him in the courtroom.  He also points to various contradicting details between the witnesses' testimony as further proof of perjury and complains that counsel was ineffective. Again, these contradictions and inconsistencies are not proof of perjury, but issues for the jury.

Based on trial counsel's affidavit, the state court found that counsel was aware of the discrepancies among the witnesses' testimony and presented these conflicts to the jury, and that these discrepancies did not establish perjury.  It also found that trial counsel was not ineffective. (S.H.Tr. Supp. 13, 18).  Petitioner has failed to show that the state court adjudication was unreasonable.  Claim 4 should be denied.

### V.  INEFFECTIVE ASSISTANCE – PROSECUTORIAL MISCONDUCT (GROUND 8)

In his eighth ground, Petitioner alleges that counsel was ineffective for failing to object when the prosecutor committed misconduct and violated his due process rights by:

(1)      offering the MySpace pictures and eliciting testimony from the detective about Petitioner's gang membership (Mem. at 82-84, 89-90);

(2)      asking Petitioner on cross-examination if the driver was lying on the stand when he identified Petitioner as the shooter (Mem. at 85);

(3)      eliciting false testimony from the second detective about Petitioner's prior inconsistent oral statement (Mem. at 86-87);

(4)      presenting testimony from the victim's friends that they previously identified

Petitioner in a photo lineup (Mem. at 87-88);

(5)    impeaching Petitioner's testimony at the guilt phase with his prior convictions of unauthorized use of a motor vehicle and possession of a controlled substance (Mem. at 88-89);

(6)    improperly "testifying" by cross-examining Petitioner at the punishment phase with leading questions that contradicted his testimony (Mem. at 91-92); and

(7)    presenting a videotape of the victim to demonstrate his physical condition (Mem. at 92).

The state court found no evidence of prosecutorial misconduct as alleged in the writ. (S.H.Tr. Supp. 10, ¶ 4). Respondent does not address this issue as a separate ground in his answer.[4]

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions by a prosecutor may violate due process in two ways: "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis

---

[4]Petitioner claims that he is therefore entitled to default judgment on this claim. (Reply at 32). Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions under which default may be entered against a party, as well as the three-step process for seeking the entry of default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Because the respondent has not failed to otherwise defend against this *action*, entry of default is not appropriate. Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). Courts have specifically rejected the notion that default judgments are appropriate in habeas cases. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) (holding that the failure to respond to claims raised in a habeas petition does not entitle the petitioner to default judgment); *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984) (holding that default judgments are not appropriate in habeas proceedings because it is the public at large that would suffer from the prisoner's release); *Goodman v. Keohane*, 663 F.2d 1044, 1047 n.4 (11th Cir. 1981) (finding "entirely frivolous" the claim that a late response to habeas petition entitles a petitioner to relief); *United States ex rel. Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir. 1974) (rejecting argument that tardy answer entitled habeas petitioner to be released); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) (holding that habeas petitioner has burden to show he is in custody in violation of the Constitution and default judgments are not available as a procedure to empty state prisons); *see Valdez v. Director*, No. 6:11CV651, 2012 U.S. Dist. LEXIS.122844, 2012 WL 3762454 (E.D. Tex. July 30, 2012) (Guthrie, Mag. J.), *adopted by* 2012 U.S. Dist. LEXIS 122842, 2012 WL 3762451 (E.D. Tex Aug. 29, 2012) (not published). Petitioner is not entitled to default judgment on this claim.

to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly,* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy*, 959 F.2d at 1317 (internal quotation marks omitted).

## A.   Evidence of gang membership

Here, Petitioner has failed to show that the prosecution acted in an improper manner, much less that his trial was rendered fundamentally unfair by any improper actions or his counsel's performance. As noted above, the detective's testimony that Petitioner was not confirmed as a gang member for purposes of the gang database does not conflict with his trial testimony that Petitioner was displaying gang signs in the MySpace pictures; a person can be in a gang and not be in the database if he has not yet met the police criteria for confirming gang membership. (4 RR 136). Similarly, the detective's testimony that he had been told not to use the pictures on MySpace as part

of the criteria unless he witnessed the events in person does not prevent those same pictures from being admissible at trial. (4 RR 17). Petitioner incorrectly asserts that the State introduced testimony that the pictures were obtained from *Petitioner's* MySpace page. (Mem. at 89). In fact, the State elicited general testimony that the pictures were downloaded from MySpace shortly after the offense; it was defense counsel who elicited the fact that they were from Petitioner's public MySpace page. (4 RR 12, 130; 5 RR 14). Nevertheless, when Petitioner testified, he did not deny it was him in the photographs and even used one photo to confirm his "H-town" tattoo. (4 RR 214-16; SX 99). He took issue only with the State's interpretation of his hand gesture as a gang sign. These facts demonstrate no misconduct on the part of the prosecution.

**B.     Truthfulness of other witnesses**

Petitioner next contends that the prosecutor violated state law when he asked Petitioner on cross-examination whether the witnesses who testified against him were lying. *See Raney v. State*, 958 S.W.2d 867 (Tex. App.–Waco 1997, pet. dism'd) (holding that it is improper for the prosecution to require the accused to express his opinion as to the truth or falsity of testimony contradicting him). A witness's opinion about whether other witnesses are telling the truth may be "wholly irrelevant" to the issues being tried and therefore inadmissible. *See Temple v. Duran*, 121 S.W. 253, 255 (Tex. Civ. App. 1908, no writ). The case law appears to consider such improper questioning harmless. *Cf. Williams v. State*, 17 S.W.2d 56, 59 (Tex. Crim. App. 1929) (op. on reh'g) (noting that defendant is entitled to prove any ill-will, animus, hatred or prejudice on the part of a witness against him; if he knew any, his attorney could bring it out and if he knew none, "we believe it not seriously wrong for the State to ask that fact."); *Williams v. State*, 17 S.W.2d 56, 58 (Tex. Crim. App. 1928) (holding that defendant's denial of guilt was equivalent to a statement that the state's witnesses had

testified falsely and finding no harm in prosecutor's questioning defendant about why witnesses would not tell the truth).

**C.**   **Perjury**

Petitioner's complaints that the state knowingly elicited false or misleading testimony from the second detective and the victim's friends were addressed in ground four. Petitioner failed to demonstrate anything more than conflicts in the testimony, which the jury decided against him. He has not shown perjury or a due process violation.

**D.**   **Impeachment and cross-examination**

Petitioner complains about the prosecutor's use of leading questions and the use of his prior convictions to impeach him at the guilt phase and counsel's failure to object. Petitioner appears to assert that the prosecutor's cross-examination was an attempt to testify indirectly on an inadmissible subject matter, and that the prior convictions were "otherwise inadmissible." (Mem. at 79). Petitioner does not demonstrate that the prosecutor's cross-examination broached an impermissible subject or did anything more than test Petitioner's version of the events surrounding the shooting. (4 RR 216-26; 5 RR 50-54). Further, defense counsel requested, and received, an immediate instruction to the jury that they could not consider the prior convictions as any evidence of guilt, but for impeachment purposes only. (4 RR 222). Other than to complain that the convictions painted a picture of his bad character, Petitioner has not shown that they were inadmissable in anyway. Petitioner fails to identify anything improper in prosecutor's manner of cross-examination.

**E.**   **DVD of the victim**

Petitioner contends that the prosecution's presentation of a DVD of the victim violated his rights to due process and confrontation under the Sixth Amendment. The DVD was admitted during

17

the punishment phase of trial, and Petitioner argues that but for this prosecutorial misconduct, he would not be facing "70 years confinement, plus a $10,000 fine" because the victim never identified him as the shooter, wrote a statement against him, or came to court.  (Mem. at 92).

The victim's mother testified that the victim has a bullet embedded in his brain and is in a persistent vegetative state.  (4 RR 29).  Using the DVD, she testified at the punishment phase that her son cannot talk, move, or respond to commands and requires a nurse for eighteen hours a day; she has quit her job to take care of him.  (5 RR 21).  He is bedridden and can tolerate a wheelchair for about four or five hours before he cries and gets upset.  He takes eight cans of formula each day through a feeding tube in his stomach because he cannot swallow; he breathes through a tracheotomy opening that has to be suctioned about four times an hour; he wears splints on his legs so they will not contract; and he wears diapers to use the restroom.  He has a tilt table that is used to stand him up, but he can only tolerate it for two to five minutes.  He takes about fifteen medications throughout the day and is scheduled for surgery to remove excess bone growth on his hips and legs that inhibits his movement. (5 RR 22-30).

The victim was undeniably unable to identify Petitioner as the shooter, write a statement against him, or come to court. The Sixth Amendment confrontation rights apply to "testimonial" evidence. *Crawford v. Washington*, 541 U.S. 36, 68  (2004) (stating that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination).  "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*  The DVD recording of a victim who cannot speak or even respond to commands does not fall within the scope of testimonial evidence.

In conclusion, Petitioner has failed to demonstrate that the state court's rejection of his prosecutorial misconduct claim was unreasonable in law or fact.  He has therefore failed to show that his attorney was ineffective, and his eighth claim should be denied.

## VI.  ACTUAL INNOCENCE (GROUND 5)

In his fifth ground, Petitioner essentially contends he is actually innocent of the allegations that he was the person who shot the victim and that he is in a criminal street gang because the witnesses lied, the prosecutor covered up the truth, and that his attorney was ineffective.  The state habeas court rejected this claim because Petitioner did not present any newly discovered evidence of actual innocence.  (S.H.Tr. Supp. 7-8).

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding. It assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim. The threshold showing for such an "assumed right" would be "extraordinarily high,"however.  *Id.* at 417.  The Court then concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence supporting guilt, did not meet this threshold.  *Id*. at 417-18.  Since *Herrera* issued, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim.  *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).  Accordingly, under both Supreme Court and Fifth Circuit case law, Petitioner is not entitled to federal habeas relief based on a claim of actual

innocence.

Moreover, Texas has an avenue in which to pursue actual innocence claims, and Petitioner did so.  In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner established as a threshold that newly discovered evidence, if true, created a doubt sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence.  The state habeas court here denied Petitioner's actual innocence claim on its merits. (S.H.Tr. Supp. at cover, 7-8).

Although Petitioner argues innocence as a substantive claim for relief due to lack of sufficient evidence, he also cites to *Schlup v. Delo*, under which claims of actual innocence can allow a federal habeas court to hear otherwise procedurally barred claims.  (Mem. at 36, 54); *Schlup v Delo*, 513 U.S. 298 (1995).  Because the State does not assert any procedural bar, Petitioner's reliance on *Schlup* is misplaced.

Ground five does not allege a claim upon which relief may be granted and should be denied.

## VII.  ACCOMPLICE WITNESS TESTIMONY (GROUND 6)

In ground six, Petitioner asserts that his conviction was based on the uncorroborated accomplice-witness testimony of three of the victim's friends, the car driver and the passenger, in violation of Texas law.

The cars driver and passenger were acquaintances of Petitioner.  Trial counsel submitted an affidavit to the state habeas court stating that he did not think Petitioner would be entitled to an

accomplice-witness instruction because although the fist fight was planned, no witness admitted

involvement in the aggravated assault with a firearm.  (S.H.Tr. Supp. 19).  The state court ruled that

only Petitioner was implicated in the actual shooting, that no accomplice-witness instruction was

required, and that counsel was not ineffective for failing to request one.  (S.H.Tr. Supp. at 12, ¶ 7

and 13-14, ¶ 9-10).

> Article 38.14 of the Texas Code of Criminal Procedure provides:
>
> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.14 (West 1965).

> Article 38.17 provides:
>
> In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction.

Tex. Code Crim. Proc. Ann. art. 38.17 (West 1965).

The accomplice-witness corroboration requirement "is a statutorily imposed sufficiency

review and is not derived from federal or state constitutional principles that define the legal and

factual sufficiency standards."  *Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999).

A complaint on this basis does not allege a violation of a federal constitutional right upon which the

Court could grant relief.  *See Ramirez v. Dretke*, 398 F.3d 691, 695 n.2 (5th Cir. 2005).

Here, the state court concluded that Petitioner was not entitled to the accomplice-witness

instruction because there was no evidence that anyone else was aware of or involved in the shooting.

The state court's conclusion, which is supported by the trial evidence, is binding.  *See Bradshaw v.

Richey*, 546 U.S. 74, 76 (2005); *Schaetzle v. Cockrell*, 343 F.3d 440, 448-49 (5th Cir. 2003) (holding

21

that it is not the function of federal habeas courts to review a state's interpretation of its own law) (quoting *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995)).

In his Reply, Petitioner argues that if the other gang members in the fight are not his accomplices, then he cannot be guilty of engaging in organized criminal activity.  (Reply at 28).  Accomplice liability for an offense requires more than the witnesses' mere membership in a criminal street gang or their participation in the fist fight.  *See* Tex. Penal Code Ann. art. §§ 7.01, 7.02 (stating, in pertinent part, that a person is criminally responsible as a party to an offense when acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense).  There is no evidence in the trial record that anyone in the fist fight solicited, encouraged, directed, or aided Petitioner with the intent to assist in the aggravated assault.  Ground six should be denied.

## VIII.  INEFFECTIVE ASSISTANCE – JURY CHARGE (GROUND 7)

In ground seven, Petitioner contends that counsel was ineffective for failing to request an accomplice-witness instruction and a related acquittal instruction, and for failing to object to superfluous definitions in the court's charge.  (Mem. at 72-76).

### A.      **Accomplice-Witness Instructions**

As discussed above in relation to ground six, Petitioner was not entitled to an accomplice-witness instruction.  Counsel was therefore not ineffective for failing to request a charge or related charge to which Petitioner was not entitled.  *See* Tex. Code Crim. Proc. Ann. arts. 38.14, 38.17; *Bradshaw*, 546 U.S. at 76;  *Johnson*, 306 F.3d at 255; *Emery*, 139 F.3d at 198.

### B.      **Definitions**

Petitioner argues that the trial court's charge improperly included definitions of "conspire

to commit," "combination," and "criminal street gang," even though these terms are not alleged in the indictment.  He asserts that he is egregiously harmed because he was convicted of a crime for which he was not charged.  This claim was raised in ground nine of Petitioner's state habeas application, but the state court findings do not address it, nor does Respondent's Answer.[5]  (1 S.H.Tr. 23-24 (application), 169-70 (memorandum); S.H.Tr. Supp. 11-15; Answer at 34-38).  Because the state court never adjudicated this issue on the merits, it is considered *de novo*.  *See* § 2254(d); *Porter v. McCollum*, 558 U.S. 30, 39 (2009).

Texas  defines the offense of engaging in organized criminal activity as follows:

(a) a person commits an offense if, with intent to establish, maintain, or participate in a combination or in the profits of a combination *or* as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:

(1) murder, capital murder, arson, aggravated robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault . . .

Tex. Penal Code Ann. § 71.02 (West 1991).

The two-paragraph indictment against Petitioner alleged two alternative manner and means of committing the aggravated assault:

did unlawfully, with the intent to establish, maintain or participate as a member of a criminal street gang, the defendant committed the offense of AGGRAVATED ASSAULT against COREY IBRAHIM, hereinafter called complainant, by SHOOTING COMPLAINANT WITH A FIREARM, and said defendant did use and exhibit a deadly weapon, to wit: a FIREARM, during the commission of the assault,

And further, the Defendant, with the intent to establish, maintain and participate as a member of a criminal street gang, did unlawfully commit the offense of AGGRAVATED ASSAULT against COREY IBRAHIM, hereinafter called complainant, by SHOOTING COMPLAINANT WITH A FIREARM, and said defendant did cause serious bodily injury to said complainant.

---

[5]Petitioner also argues that he is entitled to default judgment on this claim for this reason.  For the same reasons as discussed above in relation to his eighth claim, he is not entitled to default judgment on this claim.

(1 CR 2).  The abstract portion of the court's charge to the jury contained the following definitions:

> Our law provides that a person commits the offense of engaging in organized criminal activity if, as a member of a criminal street gang, he commits *or conspires to commit* the offense of aggravated assault.
>
> * * * * *
>
> *"Combination"* means three or more persons who collaborate in carrying on criminal activities, although participants may not know each other's identity and membership in the combination may change from time to time and participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.
>
> *"Conspires to commit"* means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement.  An agreement constituting conspiring to commit may be inferred from the acts of the parties.
>
> *"Criminal Street Gang"* means three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.

(1 CR 14-15) (emphasis added).  These definitions are from the Texas statute.  *See* Tex. Penal Code Ann. § 71.01(a), (b), (d).

Under Texas law, the application paragraph is the part of the charge that "applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations."  *Vasquez v. State*, 389 S.W.3d 361, 366-367 (Tex. Crim. App. 2012).  The application paragraph "specifies the factual circumstances under which the jury should convict or acquit," and is the "heart and soul" of the court's charge.  *Id.*  The application paragraph in this case provides:

> Now, bearing in mind the foregoing instructions, in you unanimously find from the evidence beyond a reasonable doubt that on or about May 26, 2008, in Dallas County, Texas, the defendant, Rheashad Lamar Lott, did unlawfully, with the intent to establish, maintain or participate *as a member of a criminal street gang*, the defendant *committed* the offense of aggravated assault against Corey Ibrahim, hereinafter called complainant, by shooting complainant with a firearm, and said defendant . . .  [did use and exhibit a deadly weapon or cause serious bodily injury]

24

. . . then you will find the defendant guilty of engaging in organized criminal activity as charged in the indictment.

(1 CR 16-17) (emphasis added; bracketed material summarizing the alternative aggravating elements of the assault).

This application paragraph alleges no more than what is alleged in the indictment. Petitioner was not improperly convicted of a different crime because the application paragraph did not incorporate or reference the abstract definitions. *Cf. Vasquez*, 389 S.W.3d at 368 (holding that, at the least, a general reference in the application paragraph to the abstract definition of the law of parties is required to convict defendant as a party). Federal habeas courts look to the "substantive elements of the criminal offense as defined by state law" to determine the constitutional sufficiency of a state conviction and do not demand "exactitude with respect to the conformance of the evidence to the indictment and jury charge". *See Brown v. Collins*, 937 F.2d 175, 181-82 (5th Cir. 1991). Petitioner has not alleged or demonstrated a federal constitutional violation based on the inclusion of the definitions, and he has not shown that his counsel was ineffective for failing to object to the inclusion of the definition. His seventh claim should be denied on the merits.

## IX.  SUPPRESSION AND DESTRUCTION OF EVIDENCE (GROUND 9)

In his ninth ground for relief, Petitioner contends his conviction was obtained by the suppression and destruction of exculpatory evidence, namely the recording of his oral statement to the second detective. (Mem. at 97-98). The state court found that this recording was destroyed in the course of an upgrade to the police department's computer system, and that the oral statement was admissible for impeachment purposes and used only for that purpose. The state court further found that nothing in the record indicated that the oral statement was exculpatory, withheld, or intentionally destroyed, and that Petitioner's constitutionals rights were not violated. (S.H.Tr. Supp.

15, ¶ 13-14).

As noted above, Petitioner testified to the jury that he was driven, unbeknownst to him, to the YMCA fight. He also testified that did not participate in the fist fight, but simply rendered first aid, and left in the driver's car when he heard the gunshot. (4 RR 201-12). On cross-examination, he denied telling the second detective two days after the shooting that he was not even there and had no knowledge of the incident. (4 RR 217, 221). In its rebuttal, the State called the second detective to testify that he spoke to Petitioner two days after the shooting and gave him *Miranda* warnings, and that Petitioner waived his *Miranda* rights and agreed to talk. The second detective testified that when he asked Petitioner about the shooting in the YMCA parking lot in Grand Prairie, Petitioner replied that he was not there and knew nothing about it. (4 RR 227-30). Defense counsel then stated before the jury, "Judge, I'd like the recording." When the court asked if there was a recording, the prosecutor replied, "No Judge. The Defense was made aware of this." (4 RR 230). The second detective then explained on voir dire that the recording was destroyed when the police department changed to a new computer system. (4 RR 231).

"The failure to preserve material exculpatory evidence violates due process rights irrespective of whether the government acted in good or bad faith." *See United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citing *Illinois v. Fisher*, 540 U.S. 544, 547 (2004)). The failure to preserve merely potentially useful evidence, however, does not constitute a denial of due process absent a showing of bad faith. *Id.* (citing *United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006) and *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Although Petitioner contends that the recording was exculpatory because it would have supported his trial testimony (Reply at 31), the second detective testified otherwise. The state court's fact finding on this issue is presumed correct

absent clear and convincing evidence to the contrary. *See* § 2254(e)(1). At best, the record shows that the lost recording was "potentially useful" evidence. The record shows no evidence of bad faith on the part of the police department because the record was lost when a new computer system was installed. Petitioner has failed to show that the state court unreasonably adjudicated this claim, and it should be denied.

## X. RECOMMENDATION

The petition for habeas corpus relief should be **DENIED** with prejudice.

**SO RECOMMENDED on this 5th day of May, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE